X FILED ___ LODGED
___ RECEIVED ___ COPY

APR 0 8 2009

CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY________________DEPUTY

REDACTED FOR PUBLIC DISCLOSURE

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

United States of America,

Plaintiff,

v.

1. Dustin Michael Thompson, (Counts 1-5)

2. Sean Paul McLaughlin, (Counts 1-5)

Defendants.

CR '09 - 386 PHX ROS LOA

**INDICTMENT**

VIO: 18 U.S.C. § 1343
(Wire Fraud)
Counts 1-4

18 U.S.C. § 1349
(Conspiracy to Commit Wire Fraud)
Count 5

18 U.S.C. § 982 (a)(2)
18 U.S.C. § 981(a)(1)(c)
21 U.S.C. § 853(p)
28 U.S.C. § 2461
(Forfeiture Allegations)

THE GRAND JURY CHARGES:

**INTRODUCTION**

At the specified times and at all relevant times:

**Cash Back Scheme**

1. In a "cash back" scheme, the investor (or home buyer) offers to purchase a property for more than the asking price, and submits a contract to the seller for the inflated price. The seller agrees to the sale because they are receiving their full asking price. Often real estate agents are involved in the transaction and they are aware that the selling price has been inflated.

2. Often a "straw buyer" is used to facilitate the "cash back" scheme. A "straw buyer" is someone recruited by the investor to take out a mortgage in their name and purchase a house in

their name. The "straw buyer" would not live in the house nor be responsible for the mortgage payments. In return for their services, the "straw buyer" would sometimes be paid a fee.

3. The investor often prepares a Uniform Loan Application, also known as Form 1003, for the "straw buyer." A lender uses this form to record relevant financial information about an applicant who applies for a mortgage. The investor facilitating the "cash back" scheme falsely represents the buyer's assets and income, conceals mortgages and other debts, and misrepresents sources of intended down-payments and intent to occupy the properties as primary residences. These misrepresentations are made to qualify the "straw buyer" for a mortgage. In signing the loan application, at the direction of the investor, the "straw buyer" acknowledges that "the information provided in the application is true and correct" and that "any intentional or negligent misrepresentation(s) contained in this application may result in civil liability and/or criminal penalties..."

4. A title or escrow company is used in which the subject property is deposited for safekeeping under the trust of a neutral third party (escrow agent) pending satisfaction of a contractual contingency or condition. Once the conditions are met, the escrow agent will deliver the property to the party prescribed by the contract.

5. In preparing to facilitate a real estate purchase transaction, an escrow agent is used to submit to lenders a preliminary HUD-1 known as a "Pre-audit." The Pre-audit HUD-1 lists fees and payments to be made in connection with the proposed loan and is reviewed by the lender. If the lender approves the Pre-audit HUD-1, funds are wired to the title or escrow company to disburse accordingly. The lender instructions specify that the escrow agent must notify the lender of any material changes to the HUD-1 and receive the lender's approval prior to fund disbursement. After receiving the loan documents and funds from the lender and facilitating the buyer and seller signing, escrow agents prepare a "Final" HUD-1 wherein details of the actual fund disbursements are listed for the lender's records.

6. The "cash back" scheme puts the loan at greater risk as the loan originates with negative equity in the property. For that reason, lenders do not allow a buyer to receive cash at closing of the origination of a loan.

**Defendants**

7. DUSTIN MICHAEL THOMPSON ("THOMPSON"), age 30, during the relevant time periods set forth in the indictment was a self-employed real estate investor and sole owner of BHFC, an Arizona Limited Liability Company.

8. SEAN PAUL MCLAUGHLIN ("MCLAUGHLIN"), age 29, during the relevant time periods set forth in the indictment was employed at Alpine Lending as a loan officer until on or about 2006 and then at Rapid One Mortgage, both located in Arizona.

**Title Agencies**

9. Security Title Agency ("STA") was the designated escrow company for the sale of 41719 N. Golf Crest Road, Anthem Arizona on or about October 19, 2005. The escrow file included an instruction to STA directing a disbursement of funds to BHFC.

10. Title Guarantee Agency ("TGA") was the designated escrow company for the sale of 7301 East 3rd Avenue, #109, Scottsdale, Arizona on or about April 13, 2006. The escrow file contained a disbursement report directing a disbursement of funds to BHFC Real Estate. TGA was also the designated escrow agency for the sales of 7301 E. 3rd Avenue, #216, Scottsdale, Arizona on or about April 12, 2006.

**COUNTS 1-4**

**Wire Fraud**

**[Title 18 U.S.C. § 1343]**

11. Paragraphs 1-10 of the Introductory Allegations are re-alleged and reincorporated as if fully set forth herein.

12. On or about the dates set forth below, within the District of Arizona and elsewhere, defendants THOMPSON, MCLAUGHLIN and others known and unknown to the grand jury, knowingly and willfully devised and intended to devise a scheme and artifice to defraud lenders, as identified below, and to obtain money from lenders by means of false and fraudulent pretenses, representations, and promises and by intentional concealment and omission of material facts.

**The Scheme and Artifice to Defraud**

13. It was part of the scheme and artifice to defraud that defendants THOMPSON, MCLAUGHLIN and others devised a "cash back" scheme to purchase real properties with mortgage loan applications, with respect to each count, falsely representing the borrower's assets, income, mortgage debts, sources of intended down-payments and intent to occupy the property as a primary residence. Moreover, the parties concealed from the lending institutions the cash back disbursements by mischaracterizing the payments to the buyers or failing to notify the lenders of the cash back payments.

**Execution of the Scheme by Wire Communications**

14. On or about the dates set forth below, within the District of Arizona, and elsewhere, defendants THOMPSON and MCLAUGHLIN for the purpose of executing the aforesaid scheme and artifice to defraud, and attempting to do so, knowingly transmitted and caused to be transmitted by means of wire communication in interstate commerce signals and sounds, that is, banking wire transfers, from the identified financial accounts below, in the identified amounts to the identified recipient in the District of Arizona, the monies being mortgage financing funds for the real property listed below:

| Count | Date | Wire Transmission |
|---|---|---|
| 1 | 10/24/2005 | $409,507.33 from Deutsche Bank of New York, New York to Wells Fargo Bank, in Phoenix, AZ for financing of 41719 N. Golf Crest Road, Anthem, AZ. |
| 2 | 04/12/2006 | $675,903.60 from Washington Mutual Bank in California to Wells Fargo Bank, in Arizona for financing of 7301 E. 3rd Ave. #216, Scottsdale, AZ. |
| 3 | 04/26/2006 | $483,617.17 from Countrywide Bank, Calabasas, CA to Wells Fargo Bank, in Phoenix, AZ for financing of 7301 E. 3rd Ave. #109, Scottsdale, AZ. |
| 4 | 06/05/2007 | $480,000 from US Bank in Minneapolis, MN to Wells Fargo Bank in Phoenix, Arizona for financing of 209291 S. Hadrian Way, Queen Creek, AZ. |

All in violation of Title 18, United States Code, § 1343 and 2 (aiding and abetting), and Pinkerton v. United States, 328 U.S. 640 (1946).

**COUNT 5**

**Conspiracy to Commit Wire Fraud**

**[Title 18 U.S.C. § 1349]**

15. Paragraphs 1-10 and 13 and 14 are re-alleged and reincorporated as if fully set forth herein.

16. From a time unknown to the grand jury but at least as early as October 19, 2005, through June 5, 2007, in the District of Arizona, defendants THOMPSON, MCLAUGHLIN and others known and unknown to the grand jury, conspired, confederated and agreed with each other to commit an offense against the United States of America, by engaging in an ongoing conspiracy to obtain real estate, overvalue those properties, and receive "cash back" from the sales by obtaining loans from financial institutions based upon false information contained in the loan applications, in violation of Title 18, U.S.C. 1343; Wire Fraud.

**The Purpose of the Conspiracy**

17. The purpose of the conspiracy was as follows:

a. To use an appraisal that substantially inflated the fair market value of the property in order to obtain a higher loan amount based on the appraisal.

b. To use friends, family members, and others to purchase the properties, typically multiple properties for each buyer.

c. To enable buyers to qualify for loan amounts by preparing loan applications containing false income, liabilities, asset information, and representations that the subject property would be owner occupied.

d. To use an escrow officer to facilitate the "cash back" transactions by either falsifying HUD-1 statements sent to the lender or by failing to disclose on the HUD-1 the "cash back" to THOMPSON and the other buyers.

e. To enable defendant THOMPSON to receive money for assisting with the acquisition and sale of the properties.

f. To use MCLAUGHLIN as a loan originator to prepare loan applications containing false information.

**Means and Methods of the Conspiracy**

18. It was part of the conspiracy that THOMPSON utilized "straw buyers" to apply for and purchase multiple properties for the purpose of obtaining "cash back" at closing from the lender. The scheme was completed in the following manner:

a. THOMPSON and MCLAUGHLIN assisted in locating at least twenty-six separate residential properties for straw buyers to purchase. The majority of these residences were represented to the lenders to be owner-occupied and not investment properties, each with a fair market value ranging from approximately $300,000 to $1,100,000.

b. THOMPSON, MCLAUGHLIN, and other co-conspirators received "cash back" on all twenty-six properties. A portion of the funds, diverted to THOMPSON, were then disbursed back to the "straw buyers" for their agreement to purchase the residences.

c. THOMPSON utilized MCLAUGHLIN and other loan originators to create residential mortgage loan applications containing false information, including occupancy status, employment and wages, and assets and liabilities.

d. THOMPSON and MCLAUGHLIN used escrow agents to complete the scheme. The escrow officers failed to advise lenders that funds were diverted to a third party, namely THOMPSON, MCLAUGHLIN, and the straw buyers. The funds were diverted to THOMPSON and other co-conspirators by disbursing funds to an LLC controlled by THOMPSON.

19. The following chart summarizes the properties purchased by THOMPSON, MCLAUGHLIN, and other co-conspirators to receive cash back:

| Transaction # | Date of Sale | Address | Buyer | Seller | Loan Amount | "Cash Back" Amount |
|---|---|---|---|---|---|---|
| 1 | 10/15/05 | 41719 N. Golf Crest Rd, Anthem, AZ | Dustin Thompson | Sean McLaughlin | $600,000 | $39,685 |
| 2 | 10/21/05 | 4620 N. 74th Place, Scottsdale, AZ | Rane Thompson | Kenyon Cantino | $390,000 | $91,484 |
| 3 | 11/29/05 | 41240 N. Whistling Strait Ct, Phoenix, AZ | Dustin Thompson | Sean McLaughlin | $875,000 | $65,526 |
| 4 | 01/31/06 | 4717 S. Star Canyon Dr, Gilbert, AZ | Julie Thompson | Meekyung Pak | $739,000 | $50,000 |

| | | | | | | |
|---|---|---|---|---|---|---|
| 5 | 03/30/06 | 2653 E. Verbena Dr, Phoenix, AZ | Jason Prilling | Doris O'Brien | $650,000 | $87,448 |
| 6 | 04/07/06 | 7301 E. 3rd Ave, #216, Scottsdale, AZ | Rane Thompson | Sean McLaughlin | $850,000 | $30,000 |
| 7 | 04/12/06 | 7301 E. 3rd Ave, #121, Scottsdale, AZ | Rane Thompson | Jane Privateer | $900,000 | $250,898 |
| 8 | 04/13/06 | 7301 E. 3rd Ave, #109, Scottsdale, AZ | Jason Prilling | SHRG, LLC | $610,000 | $3,927 |
| 9 | 04/26/06 | 7301 E. 3rd Ave, #221, Scottsdale, AZ | Michael Thompson | Tommy Constantine | $980,000 | $9,294 |
| 10 | 05/08/06 | 4713 N. 75th Way, Scottsdale, AZ | Vicki Thompson | Douglas Diggins | $449,000 | $88,472 |
| 11 | 05/25/06 | 7301 E. 3rd Ave, #320, Scottsdale, AZ | Jean Rodeny | Compass Dvlpmnt | $640,000 | $226,541 |
| 12 | 06/02/06 | 7526 E. Highland Ave., Scottsdale, AZ | Vicki Thompson | Michael Campbell | $480,000 | $87,448 |
| 13 | 05/25/06 | 41717 N. Club Point Dr, Phoenix, AZ | Michael Thompson | Sean McLaughlin | $1,100,000 | $100,000 |
| 14 | 06/23/06 | 41608 N. Congressional Dr, Phoenix, AZ | Sean McLaughlin | Adam Coffey | $865,000 | $6,500 |
| 15 | 06/29/06 | 4385 E. Santa Fe Court, Gilbert, AZ | Vicki Thompson | Ui Hyang Song | $610,000 | $54,507 |
| 16 | 06/30/06 | 14404 N. Fountain Hills Blvd, Fountain Hills, AZ | Hannah Davies | Jarmo Kininen | $465,000 | $99,000 |
| 17 | 07/19/06 | 7301 E. 3rd Ave, #408, Scottsdale, AZ | Hannah Davies | Shirly Ang | $798,400 | $148,213 |
| 18 | 07/25/06 | 7301 E. 3rd Ave, #105, Scottsdale, AZ | Donald Huth | Adam Valente | $950,000 | $243,000 |
| 19 | 08/02/06 | 7301 E. 3rd Ave, #113, Scottsdale, AZ | Lindy Wood | Thomas Manney | $645,900 | $162,500 |
| 20 | 08/31/06 | 7301 E. 3rd Ave, #317, Scottsdale, AZ | Hannah Davies | Sarah Skjeldstad | $835,000 | $155,000 |
| 21 | 09/16/06 | 25067 S. 190th Way Queen Creek, AZ | Donald Huth | Robert Pearce | $1,015,000 | $145,000 |
| 22 | 12/30/06 | 7301 E. 3rd Ave, #216, Scottsdale, AZ | Sean McLaughlin | Carolyn Perry | $645,900 | $25,236 |
| 23 | 01/23/07 | 5640 E. Shea Blvd, Scottsdale, AZ | Donald Huth | Marty Wilson | $1,063,914 | $257,939 |
| 24 | 01/29/07 | 18555 E. Swan Cir, Queen Creek, AZ | Julie Thompson | Fulton Homes | $447,238 | $89,447 |

| 25 | 03/01/07 | 18496 E. Swan Cir, Queen Creek, AZ | Julie Thompson | Fulton Homes | $455,216 | $91,043 |
|---|---|---|---|---|---|---|

## Overt Acts

20. In furtherance of the above-referenced conspiracy and to effect the objectives of the conspiracy, the defendants and other persons did perform and cause to be performed the following overt acts:

a. On October 10, 2005, MCLAUGHLIN prepared and signed a purchase contract for the sale of 41719 N. Golf Crest Rd, Anthem, AZ to D. THOMPSON.

b. On October 19, 2005, THOMPSON signed a Uniform Residential Loan Application for the property located at 41719 N. Golf Crest Rd, Anthem, AZ containing the following false information: his intent to occupy the property as a primary residence; overstated gross monthly wages; fictitious assets; and understated liabilities.

c. On or about November 21, 2005 THOMPSON and MCLAUGHLIN prepared and signed an invoice that was faxed to Title Guarantee from MCLAUGHLIN'S employer, Alpine Lending for purchase of 41240 N. Whistling Strait Court, Anthem, AZ. The invoice falsely characterized the cash back of $75,000 to THOMPSON'S company, BHFC, as "Re-Assignment/Decorating fee."

d. On November 30, 2005, THOMPSON signed a Uniform Residential Loan Application for the purchase of 41240 N. Whistling Strait Court, Anthem, AZ containing the following false information: his intent to occupy the property as a primary residence; overstated gross monthly wages; fictitious assets; and understated liabilities.

e. On or about December 19, 2005, THOMPSON provided a check in the amount of $5,000, drawn from a JP Morgan Chase bank account in the name of BHFC Real Estate Management Group to Title Guarantee. The check, number 2438, was used as the earnest money deposit for Julie Thompson's purchase of 4717 S. Star Canyon Drive, Gilbert, AZ.

m. On or about March 30, 2006, THOMPSON prepared an invoice that was submitted to Title Guarantee for Jason Prilling's purchase of 2653 E. Verbena Dr. Phoenix, AZ. The invoice falsely characterized the cash back of $85,000 to THOMPSON'S company, BHFC, as "Re-Assignment/ Decorating fee."

n. On or about April 18, 2006 THOMPSON prepared an invoice that was submitted to Title Guarantee for Rane Thompson's purchase of 7301 E. 3rd Ave. #121, Scottsdale, AZ. The invoice falsely characterized the cash back of $250,898.62 to THOMPSON'S company, BHFC, as "Re-Assignment/ Decoration fee."

All in violation of Title 18 U.S.C. §§ 1349 and 2 (aiding and abetting).

**FORFEITURE ALLEGATION**

21. As a result of committing the conspiracy offense alleged in Count Five defendants THOMPSON and MCLAUGHLIN shall forfeit to the United States pursuant to 18 U.S.C. § 981(a)(1)(c) and 28 U.S.C. § 2461 any property, real or personal, which constitutes or is derived from proceeds traceable to a violation of 18 U.S.C. §1349.

22. As a result of committing one or more of the wire fraud offenses alleged in Counts One (1) through Four (4) of this Indictment, defendants THOMPSON and MCLAUGHLIN shall forfeit to the United States pursuant to 18 U.S.C. § 982(a)(2), any property constituting, or derived from, proceeds the said defendants obtained directly or indirectly, as a result of the said violations.

23. Cash Proceeds: The government will seek a judgment for the sum of approximately $2,608,108 in U.S. Currency and all interest and proceeds traceable thereto, in that such sum in aggregate constitutes the proceeds derived from the criminal violations, for which the defendants who are convicted of one or more of said offenses shall be jointly and severally liable.

24. If any of the above-described forfeitable property, as a result of any act or omission of the defendants:

a. Cannot be located upon the exercise of due diligence;

b. Has been transferred or sold to, or deposited with, a third person;

f. On or about January 1, 2006, THOMPSON provided a check in the amount of $1,000, drawn from a JP Morgan Chase bank account in the name of BHFC Real Estate Management Group to Title Guarantee. The check, number 2471, was used as the earnest money deposit for Rane Thompson's purchase of 7301 E. 3rd Ave. #216, Scottsdale, AZ.

g. On January 20, 2006, MCLAUGHLIN signed a Uniform Residential Loan Application for the purchase of 7301 E. 3rd Ave. #216, Scottsdale, AZ containing the following false information: his intent to occupy the property as a primary residence; overstated gross monthly wages; fictitious assets; and understated liabilities.

h. On or about January 30, 2006 THOMPSON prepared an invoice that was submitted to Title Guarantee for Julie Thompson's purchase of 4717 S. Star Canyon Drive, Gilbert, AZ. The invoice falsely characterized the cash back of $50,000 to THOMPSON'S company, BHFC, as "Re-Assignment/ Decorating fee."

i. On or about March 01, 2006, THOMPSON provided a check in the amount of $1,000, drawn from a JP Morgan Chase bank account in the name of BHFC Real Estate Management Group to Title Guarantee. The check, number 2511, was used as the earnest money deposit for Jason Prilling's purchase of 2653 E. Verbena Dr. Phoenix, AZ.

j. On or about March 15, 2006, THOMPSON provided a check in the amount of $5,000, drawn from a JP Morgan Chase bank account in the name of BHFC Real Estate Management Group to Title Guarantee. The check, number 2529, was used as the earnest money deposit for Jason Prilling's purchase of 7301 E. 3rd Ave #109, Scottsdale, AZ.

k. On March 21, 2006, THOMPSON provided a check in the amount of $1,000, drawn from a JP Morgan Chase bank account in the name of BHFC Real Estate Management Group to Title Guarantee. The check, number 2541, was used as the earnest money deposit for Vickie Thompson's purchase of 4713 N. 75th Way, Scottsdale, AZ.

l. On or about March 28, 2006, THOMPSON signed and submitted to Title Guarantee a Nominee Instruction letter that established Jason as the buyer nominee for the purchase of 7301 E. 3rd Ave #109, Scottsdale, AZ.

c. Has been placed beyond the jurisdiction of the Court;

d. Has been substantially diminished in value;

e. Has been commingled with other property which cannot be subdivided without difficulty, it is the intent of the United States, pursuant to 21 U.S.C. § 853(p) to seek forfeiture of any other property of said defendants up to the value of the above forfeitable property, including but not limited to all property, both real and personal, owned by the defendants.

All in violation of Title 18, United States Code, §§ 981(a)(1)(c), 982 (a)(2) and 1343, and Title 28, United States Code, § 2461.

A TRUE BILL

/s/
FOREPERSON OF THE GRAND JURY
Date: April 8, 2009

DIANE J. HUMETEWA
United States Attorney
District of Arizona

/s/
KEVIN M. RAPP
Assistant U.S. Attorney