LAW OFFICES OF PATRICK E.  McGILLICUDDY
Patrick E. McGillicuddy
The Historic Metro Office Building
331 North First Avenue
Suite 210
Phoenix, Arizona  85003
(602)452-2915
Fax-602-926-8422
State Bar No.  6191
e-mail:pmcgillicuddy@qwest.net
Attorney for Defendant
Dustin Michael Thompson

**UNITED STATES DISTRICT COURT**
**DISTRICT OF ARIZONA**

| | |
|---|---|
| United States of America | ) |
|         Plaintiff | )   CR-09-386-PHX-ROS |
| | ) |
| vs. | )   **SENTENCING MEMORANDUM** |
| | ) |
| | ) |
| Dustin Michael Thompson | ) |
|         Defendant | ) |
| _____ | ) |

Excludable delay, pursuant to 18 U.S.C. Sec. 3161(h)(1)(F), will not  occur as a result of the Defendant's memorandum.

Attorney for the Defendant, Dustin Michael Thompson, recommends that the Defendant receive a sentence of time served and thirty six months of supervised release. If the Court is inclined to incarcerate the Defendant, counsel requests that a period of home confinement, with allowances for work and necessary errands be imposed instead of time in the Bureau of Prisons.  If the Court intends to impose prison time, the Defendant requests that he be allowed to self surrender on a date subsequent to his wife's release from prison, so that he can watch her children while she is away.

RESPECTFULLY SUBMITTED March 10, 2011

/s/Patrick E. McGillicuddy
Patrick E.  McGillicuddy
Attorney for Defendant

MEMORANDUM

Before the Court is a first time felony offender who plead guilty to a mortgage fraud related offense, and cooperated with the Government and offered evidence against one Vincent Vindetelli, a loan officer who secured dozens of fraudulent loans from various lenders over the last several years.

Pursuant to 18 U.S.C. Section 3553(a) the Court must consider a number of factors in imposing a sentence that is no greater than necessary to accomplish the sentencing goals of that statute.

The first factor the Court must consider is the nature and circumstances of the offense and the characteristics of the defendant. The Court is aware that the defendant participated in a "cash back" mortgage fraud scheme in which a number of loans were obtained from lenders for the purchases of various houses in the Phoenix area. The Court is aware that participants in this scheme would find a distressed seller, offer them more than the asking price for the home, on the condition that the seller return the excess amount of cash obtained through the sale of the artificially inflated sales price to the buyer at the close of escrow.

In order for the scheme to succeed, a false appraisal was obtained to justify the loan amount to the lender. The lender, who at times, was in on  the scheme, would inflate the income of the buyer, whether it be the Defendant or a "straw buyer" to justify the loan amount. Other times, the buyer would falsify his income to obtain the loan. An escrow officer was used in the scheme as well. The escrow officer would submit a false HUD 1 at the close of escrow that contained a directive to the lender to provide the cash back proceeds to the buyer or a third party. In some instances, the buyer would utilize the services of a "straw buyer" a person who would be paid cash to apply and obtain a loan and then deed the home to the true buyer. In some instances, the buyer would declare, falsely, that the home was intended to be occupied

1  as a primary residence, when in fact the buyer, as the Defendant did on several

2  occasions, occupy the house for a short period of time and then move out and rent the

3  home out.

4        In this scheme, the Government alleged that the Defendant directly purchased

5  several homes, used straw buyers to obtain other properties, and assisted others in

6  utilizing the cash back scheme to obtain properties for themselves.

7        The probation report states that intended loss "is calculated at $2,608,108,

8  which is the amount of funds that was diverted from the original loan amount to the

9  defendant and his co-conspirators." PSR Par.16. In materials provided to counsel by

10  the Government, the Government alleges the loss amount exceeds $4,000.000.00. The

11  Government arrived at this loss amount by tabulating the losses the lenders incurred

12  when the properties went into foreclosure and were resold at a dollar amount that was

13  less than the amount of the original loan.

14        This is the Defendant's first felony conviction. The probation officer calculated

15  that the Defendant's criminal history category is Category III. He based this

16  calculation on the Defendant's three prior misdemeanor convictions for DUI related

17  offenses. PSR Pars. 27-29.

18        Counsel for the Defendant submits that the Defendant's criminal history is

19  overstated. He was convicted of three misdemeanors, all alcohol related. This record

20  indicates that the Defendant has a substance abuse problem, or did have one during

21  the 2006-2008 calendar years. He has not reoffended since 2008. In counsel's view,

22  the Defendant does not have a criminal orientation, but is a substance abuser, whose

23  drinking has led him to incur serious legal difficulties. Nevertheless, there are serious

24  concerns that the Defendant has a substance abuse problem that could endanger the

25  safety of the community. Therefore, pursuant to 18 U.S.C. 3553(a)(1)(D), counsel

26  recommends that the Defendant be ordered to participate in a substance abuse

27

28

program at the direction of the probation officer.

Prior to his involvement in this offense, the Defendant led a successful life. He attended Fort Hays University in Kansas on a football scholarship. PSR Par. 45 College football is an extremely arduous sport, one that demands a great deal of time in a student's life. Football players practice five times a week for several hours a day, view film of their opponents, attend team meetings, and work out. The night before a game is spent at a hotel, where meetings are held to discuss the game and the team's opponent. The games take approximately six hours, including all pre-game activities. Even in the off season, college football players must work out with weights, do aerobic conditioning drills, and practice during the spring for three weeks. It is quite an accomplishment for a young  man to obtain a scholarship to play college football,, and todevote the necessary time to play the sport.  The Defendant sustained several serious injuries while playing football. PSR Par.41.It is a testament to the Defendant's work ethic and perseverance that he was able to play football in college and obtain his college diploma.

The Defendant's work history is solid. From 2002 through 2007, the Defendant worked in the insurance industry. He earned a substantial income while doing so. PSR Pars. 49-50. He has sold cosmetics, PSR Par. 48, and worked for an online university. PSR Par.47. He is currently employed as construction worker for a firm that cleans up foreclosed houses so that they can be resold. PSR Par.46. The fact that the Defendant was able to secure employment so soon after his release from jail following his guilty plea is remarkable given the state of the current economic conditions. The Defendant has described this work to counsel as being very dirty and physical. The Defendant has also spoken to counsel of his plans to start his own construction renovation business as soon as his legal difficulties in this case end. It is clear that the Defendant is a very hard worker,, and has been a productive member of society for his adult years. Counsel believes that he will continue to be a productive member of society if

1   sentenced to time served in this case.

2         The Defendant remarried following his divorce from his first wife. His current
3   wife, who is incarcerated in Colorado, has several children from a previous marriage.
4   The Defendant has taken responsibility for these children and is caring for them at this
5   time. PSR Par. 38. Counsel submits that it takes a special man to undertake the care of
6   the children of another man, and treat them as he would his own. The Defendant is to
7   be commended for his actions, as many men would not willingly undertake such a
8   burden. Counsel submits that incarcerating the Defendant would harm these children,
9   as they have bonded with him and consider the Defendant to be their father.
10  Moreover, if the Defendant is incarcerated, the children will be without a parent in
11  their life until their mother is released from prison.

12        Who the Court has before it is a young man who has been a very hard working
13  and successful individual, who unfortunately, succumbed to the temptation of easy
14  money. It is clear that the Defendant stepped over the legal line and is guilty of the
15  offense. His actions caused a great loss to home lenders. However, his actions appear
16  to be an aberration. Prior to his involvement in this scheme, the Defendant was a
17  successful hard working individual who made substantial contributions to society,
18  and, if given a chance, will continue to contribute to society through his hard work. He
19  is a compassionate human being, who has taken on the responsibility of raising
20  another man's children out of his love for his wife. He is not a hardened criminal, but
21  rather a young man who fell for the allure of easy money, which many individuals
22  have done. A prison sentence is not necessary for such an individual who has so much
23  to offer society.

24        Other sentencing factors that the Court must consider is that the sentence must
25  reflect the seriousness of the offense. The Defendant acknowledges that the offense is
26  very serious. However, as will be demonstrated, in other mortgage fraud cases that
27
28

were equally or more serious based on the loan amounts, and the cash back obtained, sentences of time served were imposed by other judges.

Another purpose of the sentencing statute is to promote respect for the law. A time served sentence will do that in this case. The Defendant has served nearly nine months in pre-trial custody in this case. This incarceration has caused him to realize that it is a very serious matter to violate the laws of the United States. He has gained a new found respect for the law due to his pre trial incarceration. Respect for the law by the public is derived from sentences that are proportional for the offense of conviction, the Defendant's involvement in the offense, his personal history and characteristics, and sentences received by other participants in similar criminal offenses. As will be demonstrated below, many individuals charged with mortgage fraud related counts have received time served sentences. A sentence of time served will promote respect for the law by the public at large.

Adequate deterrence is another important factor in imposing a sentence. The Defendant is a college educated man who is very intelligent. He has been released with conditions, including electronic monitoring. This monitoring was later removed by the Court. He has been allowed to travel out of state. He has earned the trust of the Court. A sentence of time served is adequate to deter the Defendant from future criminal conduct. It is likely that the Court will place the Defendant on supervised release. The Defendant understands that should he violate his supervised release, he could be returned to prison. Because the Defendant is ambitious and is desirous of starting his own business, and because he has had financial success inn the past, he will have a great incentive to remain a law abiding citizen. He also understands that this conviction could be used to enhance a future sentence should he be convicted of a felony offense. Because the Defendant is intelligent, motivated to succeed, and understands the severe consequences should he violate the law in the future, a time served sentence is adequate to deter him from committing future crimes. Moreover,

1   the fact that he has taken responsibility for his wife's children, and clearly loves them,

2   he knows that future criminal activity will deprive him of the company of those he

3   loves, including his wife. This factor alone is adequate to deter the Defendant.

4        A sentence of time served is adequate to deter the general public from

5   committing federal crimes. Nine months of incarceration is a significant loss of

6   liberty. Moreover, supervised release is a significant limitation on one's freedom,

7   which also acts as a deterrent to the public from committing new criminal offenses. A

8   sentence of time served will also protect the public from future crimes of the

9   Defendant,, for the same reasons as set forth above.

10       In imposing a sentence in this case, the Court should also consider the fact that

11  the Defendant agreed to cooperate with the Government against loan officer Vincent

12  Vinditelli. The Defendant used Vinditelli as a lender in his transactions. In reviewing

13  the discovery provided by the Government to counsel, it appears that Vindetelli would

14  simply make up income amounts so that the loan would go through. He caused

15  millions of dollars of losses to lenders by doing so. The Defendant's information

16  regarding Vindetelli was very helpful in securing an indictment against Vindetelli. His

17  cooperation should be strongly considered by the Court, as it indicates the

18  Defendant's desire to make amends by assisting the Government in prosecuting a

19  serious fraudster.

20       Pursuant to 18 U.S.C. 3553(a), the Court must impose a sentence that is just,

21  and reasonable and no greater than necessary to achieve the sentencing goals of that

22  statute. A particular sentence must not be unreasonably disparate from the sentences

23  imposed on defendants convicted of similar offenses. As set forth below, a time

24  served sentence will not promote a sentence that is unreasonable, or one that involves

25  unwarranted sentencing disparity.

26       Counsel has surveyed other mortgage fraud cases and has found that many

27

28

similarly situated defendants have received sentences of time served, even when released prior to trial, or probation. Moreover, sentences of imprisonment have been surprisingly low, and are dependent on certain factors not present in this case.

In <u>United States v. Bernadel</u>, et. al. CR 08-256 defendant Bernadel received 200 months in the BOP. Dkt 474. Bernadel was the mastermind of a massive fraud involving millions of dollars in losses. He proceeded to trial and was convicted. Other defendants in that case were treated much more leniently. Defendant Adorno received time served. Dkt 484. Defendant Parrish received time served. Dkt 504. Defendant Bartlemus received 30 days. Dkt 518. Defendant Branch received time served. Dkt 522. Defendant Lucero received 24 months. Dkt 560.

In <u>United States v Guzman</u> et. al., CR-08-598 the Government alleged a cash back scheme that realized 2.135 million, and involved properties worth 17,2 million. Indictment Dkt 1.  Defendant Valdez received a sentence  of time served. Dkt 152. Valdez served approximately two months in custody prior to his sentence. Dkt 58. Defendant Olson received a sentence of time served. Dkt 221. He had been released pre-trial. Dkt 18. Defendant Vasquez' case was dismissed. Dkt 176. Defendant Pirwitz was released Or, Dkt 23, and received time served. Dkt233. Counsel was unable to determine what sentence Defendant Guzman received.

In <u>United States v. Morar</u>, et. al. CR-08-612 the Government sought to forfeit at least 1.9 million dollars if it secured a conviction. Dkt 1, p.16. In <u>Morar,</u> Defendant Babheti received time served of approximately 14months. Dkts 278, 45. Defendant Swallows received 2 years probation. Dkt 589. Defendant Zebarth received time served. Dkt 640. Zebarth was released OR pending trial in that case. Dkt 29. Defendant Sam Dobos received 27 months in BOP. Dkt632.He went to trial. His wife, Georgianna, received 27 months. Dkt633. Defendant Meija received probation. Dkt 641.

Of special importance is the sentence received by Christopher Bartlemus.

1   Bartlemus was indicted in two cases, U.S. v. Maximo CR 08-368, and U.S. v.

2   Bernadel CR 08-256. He entered into a cooperation agreement with the Government.

3   Cr-08-256 Dkt 280. He was released Or in that case. Dkt 24. He was summoned to

4   Court in 08-368. Dkt 34, and released OR, Dkt 34. Bartlemus was an escrow officer

5   for  Security Title of Scottsdale. 08-368 Indictment, par 3, Dkt3. His plea agreement

6   called for his loss to be capped at 1 million dollars.. His sentence was to run

7   concurrently with any sentence imposed in Cr 08-256. CR 08-256 Dkt 280. The

8   Government also agreed not to charge him in the Thompson indictment. Id.

9        In the plea agreement signed by Bartlemus in 08-368, Bartlemus admitted that

10  he, as an escrow officer with a fiduciary obligation to lenders, failed to advise lenders

11  that there would be a payout to a third party to the transaction, in other words "cash

12  back". He admitted to facilitating numerous cash back transactions between 2005-

13  2007. He did so by doctoring HUD1 documents to get cash back. Had Bartlemus not

14  done so, the loan would not go through. CR 08-368 Dkt 359 , pp.7-9.

15       Bartlemus' attorney filed a sentencing memorandum in Cr 08-368. Dkt 584. At

16  page three of the memorandum, Bartlemus' attorney admitted that the cash back

17  scheme could not have been successful  without Bartlemus' assistance.

18       The Defendant in this case used Bartlemus in a number of transactions, as did

19  his co-conspirators. By Bartlemus' own admission, the Defendant in this case could

20  not have obtained the loans that he did without Bartlemus' assistance. Bartlemus was

21  the classic insider whose actions were essential to carry out the scheme, in the

22  Defendant's case and others. Without his help, millions of dollars would not have

23  been lent out, houses would not have gone into foreclosure, causing untold millions of

24  dollars in losses to the lenders, and Thompson and others could not have received

25  their cash. In short, no Bartlemus, no scheme.  Bartlemus abused a position of trust, a

26  fiduciary duty to lenders, and used his special skills to carry out the scheme. For all of

27

28

that, he received thirty days of incarceration.

Counsel submits that given the number of defendants in other cases who received time served, some of whom did only a short time in jail, a sentence of greater than time served would be an unwarranted sentencing disparity. Moreover, for Thompson to receive any more time in prison, given Bartlemus' slap on the wrist, would be a travesty of justice. Therefore, counsel recommends that the Defendant in this case be sentenced to a term of time served, and three years supervised release.

RESPECTFULLY SUBMITTED March 11, 2011.

/s/ Patrick E. McGillicuddy
Attorney for Defendant
Dustin Michael Thompson

CERTIFICATE OF SERVICE
I hereby certify that on March 11, 2011 electronically transmitted to the Clerk's Office using the CM/ECF System for filing:

Courtesy copy to chambers
Honorable Roslyn O. Silver

/s/Patrick E, McGillicuddy